UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------x
                                            :
KENNETH WOODLEY                             :
                        Plaintiff,          :
                                            :
            – against –                     :        13-CV-5541 (TPG)
                                            :
PATRICK GRIFFIN,                            :            **OPINION**
                                            :
                        Defendant.          :
                                            :
--------------------------------------------x
```

Kenneth Woodley brings this petition for a writ of *habeas corpus* arguing that: (1) the state trial court's refusal to afford him a competency examination deprived him of the right to a fair trial; and (2) his complete absence at trial is also grounds for relief because he did not knowingly and voluntarily waive his right to be present. The state opposes the petition, arguing that given the deferential standard of review afforded to factual determinations made at the trial level, this court should accept the state court's finding that petitioner was competent to stand trial, and also competent to waive his right to be present.

The petition for *habeas corpus* is denied because petitioner has not shown that it was objectively unreasonable for the trial court to refuse to order a competency examination. Moreover, petitioner's refusal to attend trial does not warrant *habeas* relief because he knowingly and voluntarily waived his right to be present.

1

Background

On February 23, 2007, a grand jury indicted petitioner for burglary in the second degree, charging him with stealing several clock radios from a Hilton Hotel. <u>See</u> Indict. at 2; Felony Compl. at 1. The case was assigned to Justice Yates of the New York Supreme Court. In April of 2007, petitioner's attorney, David Affler of the Legal Aid Society, submitted a pre-pleading memorandum to the court. The pre-pleading memorandum described petitioner's many mental health issues. <u>See</u> Pre-Plead. Mem. at 3–5. It explained that as a child, petitioner had been enrolled in a special education curriculum at a "school for the handicapped," and was now receiving Supplemental Social Security Income. <u>Id.</u> Moreover, it explained that petitioner had been diagnosed with bipolar disorder, a learning disorder, and hearing loss. <u>Id.</u> at 4.

The pre-pleading memorandum also explained that petitioner had received psychiatric treatment at a continuing day program at the Albert Einstein College of Medicine from 2003 until 2007. <u>Id.</u> He had been prescribed the psychiatric medication Seroquel. <u>Id.</u> at 5. Included with the memorandum was a letter from Dr. Elise Richtman, a psychiatrist at the day-program. Letter from Elise K. Richtman, MD to David Haffler [sic] (Mar. 15, 2007). Dr. Richtman explained that petitioner's mental illness is exacerbated when not treated, and suggested that "impaired cognition and impaired judgment played a role" in the burglary. <u>Id.</u> Also included with the pre-pleading memorandum

were numerous documents evincing petitioner's mental illness, including a log for Seroquel prescriptions and a psychiatric evaluation from 2006. See Psych. Ev. Update (Mar. 15, 2006).

### Pretrial Proceedings

Petitioner was scheduled to appear before Justice Yates for proceedings on May 30, 2007. See Tr. May 30, 2007 at 1. Petitioner arrived at the courtroom that morning, and waited for his attorney to arrive. Tr. at 2:7–10. However, once petitioner's attorney arrived at the proceedings, petitioner left the building. Tr. at 2:12. Justice Yates noted petitioner's absence, and then stated:

> "I also want to add something else. I had his [petitioner's] previous case from 98 to 2000. There is a long history with him. My notes from that case are that he was manipulative and falsely claims various illnesses whenever it suited him for treatment for various complaints and illnesses."

Tr. at 2:18–24. Petitioner's counsel then explained that in his experience, persons with bipolar disorder often gain a reputation for manipulation and malingering when in fact their obstructive behavior is a result of the mental disorder. Tr. at 3:4–13. Justice Yates then described that in his previous experiences with petitioner, petitioner had avoided or obstructed a number of proceedings. Tr. at 3. He noted that at the previous proceedings, petitioner had requested a competency hearing but refused to be interviewed for it three or four times. Tr. at 4:1–5. Justice Yates concluded by issuing a bench warrant to guarantee petitioner's attendance at future sessions. Tr. at 5:3.

On June 7, 2007, petitioner was returned to court on the warrant and remanded pending trial. State Court Record ("SCR") at 251–56. A week later, petitioner filed a motion for reassignment of counsel, claiming that attorney David Affler had failed to visit him, inform him of pertinent motions, investigate the case, and make certain applications. SRC at 72–79. Justice Yates granted the request and assigned Paul Feinman as counsel.

Petitioner's case was transferred to Justice FitzGerald for trial. Justice FitzGerald scheduled a suppression hearing for October 19, 2007. See Tr. Oct. 19, 2007 at 1. At some point prior to the hearing, the state had offered petitioner a plea agreement that would reduce the charges against him from a class C felony to a class D felony. Tr. at 4:2–5. At the hearing, Justice Fitzgerald asked petitioner if he would accept the plea agreement. Tr. at 4. Petitioner then conferred privately with counsel. Tr. at 5:20–24. Counsel told the court that he had advised petitioner to accept the plea agreement. However, when questioned as to whether he accepted the agreement, petitioner stated:

> "If knew you were going to be, if it was going to be switched over to you . . . I would have asked Yates because I want new counsel, I am asking my new counsel." Tr. at 6: 10–14. Justice FitzGerald asked why, to which petitioner responded: "I didn't really have that many problems with Afler [his previous attorney]."

Tr. at 6:24–25. He then asked for more time to consider the proposed plea agreement. Tr. at 7–8.

Justice FitzGerald explained that if petitioner did not accept the plea agreement, he would proceed with the suppression hearing and was "ready to

4

try the case." Tr. at 8: 20–21. Petitioner responded: "I feel I am not at this particular time—I take psychotic medication and stuff like that." Tr. at 8:22–24. The following exchange then occurred:

> THE COURT: Yes, Judge Yates mentioned that you will try to manipulate the system. I think in the earlier case with him you tried to claim you were 730 [mentally incompetent] and he found you to be a malingerer. I gather you are now doing that with me, is that correct? You are telling me about psychotic medication even though you sound perfectly rational to me at the moment. What were you going to tell me about your psychotic medication, sir?
>
> [THE PETITIONER]: I was going to tell you that it's been affecting my nervous, my nervous --
>
> THE COURT: How is it affecting your nervous system?
>
> [THE PETITIONER]: Because it is a high-powered medication.
>
> THE COURT: How does it manifest itself, sir?
>
> [THE PETITIONER]: It's not leaving me in the mental state to deal with this situation right now at this particular time, so I am asking --
>
> THE COURT: You have been dealing with this situation since you were arrested. What was the date of the arrest?
>
> ***
>
> THE COURT: It's been a long time. You have had to deal with this situation since February . . . . I am not here to negotiate with you, sir, I don't care if you take the plea or not.
>
> [THE PETITIONER]: What I am saying is, is that I have a psychotic situation I am dealing with and I am also taking insulin which I have documentation from this table.
>
> ***
>
> [THE PETITIONER]: May I have, Mr. Roberts, please till Monday?

5

THE COURT: What were you going to do between now and Monday? Today you are going to stop your medication?

[THE PETITIONER]: That is what I am going to do to try to get better.

THE COURT: Too bad because you sound very lucid and clear to me right now, I don't know what you would be like stopping your medication.

**** 

Tr. at 8–11. After further discussion, Justice FitzGerald explained that Justice Yates had called him before transferring the case, stating that "he's had a history with you and [gave] me a heads up on the kinds of things you might be discussing with me." Tr. at 13. Nonetheless, Justice FitzGerald granted petitioner's request to adjourn until the following Monday. Tr. at 19.

The following Monday, Justice FitzGerald again asked petitioner whether he would accept the plea agreement. Pretrial Tr. Oct. 22, 2007 at 2. Petitioner responded "My answer would be a couple of days." Tr. at 2:20–21. A lengthy discussion ensued, at the conclusion of which petitioner's counsel told the court:

For the record, I have advised my client after reviewing the expected testimony of the maid in the hotel, the officer, the security guard in the hotel and the arresting officer that took his confession that going to trial is a foolish mistake. He's declined to give me a response as to the offer of three and a half years [imprisonment], I have urged him to take it. We are ready for hearing.

Tr. at 6:19–7:1. Concluding that petitioner had not accepted the plea agreement, Justice FitzGerald proceeded with the suppression hearing. Tr. at 7.

### Jury Selection and Trial

Jury selection began later that day. Trial Tr. Oct. 22, 2007 at 1. Before jury selection, Justice FitzGerald advised petitioner of his right to be present for juror questioning. Tr. at 15–16. There was then a pause in the proceedings, after which the courtroom sergeant advised the court: "Judge, before we go on, the defendant wants to go back to the cell. He doesn't want to stay here for the jury." Tr. at 16. Justice FitzGerald then discussed the situation with defense counsel, and resolved that "Since the defendant won't tell you one way or the other [regarding his right to be present at jury selection] I will be guided by him if he still wishes to remain here . . . If he . . . wishes to waive [that right], we will know by his actions . . . ." Tr. at 17:5–18. Justice FitzGerald then explained to petitioner his right to be present at jury selection and trial. Tr. at 18. He went on to say: "if you elect to absent yourself from the courtroom, you have an absolute right to do that . . . . The trial will continue in your absence." Tr. at 18:12–18. Petitioner expressed a number of complaints, and asked for a few more days' time to "take a plea or something." Tr. at 21. The following exchange then occurred:

> THE COURT: The case was sent out by Judge Yates ready for hearing and trial. Judge Yates got it ready, it came in here, I am ready to try it, everybody is ready to try it, okay? Now, you can participate and assist your attorney or you can try to be

7

obstructive and try to make up things like you have done in front
of Judge Yates, but it is not going to stop the proceedings, okay?
Now, your call, you want to stay here, you have an absolute right
to stay here. You want to leave –

[THE PETITIONER]: All this paperwork, Your Honor, all this
paperwork, your honor, that I am seeing right now was never, it
was offered, it was offered to me when I was in Judge Yates part,
but I didn't know that there was a police report like I see now.

THE COURT: You should have taken it, but you were too busy
fighting Judge Yates, you were much too busy fighting Judge Yates
to accept it, you wanted to cause trouble.

Tr. at 22–21. After further discussion regarding petitioner's presence at jury
selection, the following exchange occurred:

[THE PETITIONER]: If you are going to select it [the jury], select it
tomorrow

THE COURT: No, I am sorry. I run the schedule, we are selecting it
now. So you want to leave then, is that right?

[THE PETITIONER]: I can't hear.

THE COURT: You want to leave, okay. If you want to be here, that
is fine.

[THE PETITIONER]: You violate my constitutional rights.

THE COURT: No, we are trying to do everything we can to
accommodate you. You are trying to do everything you can to
obstruct us.

Tr. at 24. Petitioner then left the courtroom. Tr. at 25. Justice FitzGerald

continued jury selection, and then took a recess. Tr. at 63. Defense counsel

spoke with petitioner during the recess. Tr. at 64. Petitioner told counsel that

he "wanted an Alford plea." Tr. at 63:25–64:1. Defense counsel informed

petitioner that "no such plea would be forthcoming" and "asked him to come to

8

court." Tr. at 64. Petitioner refused to come to court, and jury selection proceeded without him. Tr. at 65.

Petitioner's trial began on October 23, 2007. Tr. Oct. 23, 2007 at 1. However, petitioner was not present. Defense counsel informed the court that he had tried to persuade petitioner to come to trial, and the following exchange occurred:

> THE COURT: On that topic, did he say he wanted to come down?
>
> MR. FEINMAN: He did not. He informed me first that he was hungry, he was tired, he wanted time to think about what to do with the day's events. I informed him that that was a decision that would be made if he didn't come to court, that the jury has been picked, I would like him to come, I could use his help. He informed me that he would need time to consider it and he was not definitive in any manner about coming back to court. I told him that any chance for a plea or resolution would have to be before testimony, I was just met with a blank stare and it made me start to reconsider some other issues.
>
> THE COURT: All right, so on this issue anyway you asked him to come down, he did not wish to come down now?
>
> MR. FEINMAN: Yes.
>
> THE COURT: Anything else you wish to note?
>
> MR. FEINMAN: My apologies to all the parties here for this late issue, but I am asking the Court to consider halting the proceedings and having Mr. Woodley examined as to his mental competence. I know what I don't know. I know Mr. Woodley has a history of being manipulative, pretending not to hear things when he obviously does, but the events leading up to today and his conduct in each of my times going up to speak to him as we started to pick the jury yesterday makes me wonder about his competence. And I use the word wonder specifically because obviously I am a layperson, but my sense is that if he was trying to play a game, if he really didn't, if he was gaming us, at some point the gaming would have been up, and his facial expressions, the

tone of his voice, his mannerisms make me wonder if he is aware of circumstances at the moment. And again, my apologies for this late notice, it may not be necessary to do it, but I am concerned about his mental competence to understand and appreciate the consequences of what is happening now.

THE COURT: But you are making that request based on the, perhaps, illogic of what he is doing, you would not do it in his situation?

MR. FEINMAN: Partly, and his physical conduct and features as I speak with him. I am looking at a person who appears to not look back at me. I am looking at someone who doesn't seem to show consciousness or intelligence behind the eyes. I am not sure if that is the right way to say it, but it's just not me saying boy he is being foolish or stupid or stubborn, I think there is something else not happening behind the eyeballs.

THE COURT: All right, the history of the case is something that started even before this case. He's had two cases in front of Judge Yates. The first cast he had was 4953 of '98. In that case, because in Judge Yate's opinion initially he was being manipulative, but to be absolutely certain it wasn't just manipulation and that it may have been a mental problem he ordered the 730. But the defendant, apparently is a predicate manipulator, what he did was delayed the 730 exam for more than a year by either on the one hand actually refusing to see the doctors or on those days when the doctors were arranged refusing to be produced . . . .

Ultimately, finally through trick and device, Judge Yates managed to have the doctors I think produced to the defendant in court and did a 730 there ultimately. The doctors found him fit and, not surprisingly, quote, manipulative, unquote. They were about to do a hearing on . . . whether or not the defendant was unfit to controvert the finding of fitness, but on the eve of that hearing the defendant finally pled guilty in that case.

On this case here, the present case pended in front of Judge Yates since the time of indictment. There was nothing that Judge Yates noticed that showed him to have any mental problems, nor was there a request either by yourself up till now or his prior attorney who was with him for a long time.

MR. FEINMAN: Yes, sir.

10

THE COURT: So till the eve of trial there was nothing that gave any one of those participants, two lawyers and a judge, a thought even that he needed a 730 exam.

MR. FEINMAN: That is correct.

THE COURT: I have seen the defendant, I see someone who is trying to, quote, game the system. How he is doing it begs questions. It appears, though, that even in this case his ability to con and manipulate evidences itself. At the time he is met by Officer Hargrove in the hallway [the day of his arrest] he first tells her he is a Fed Ex agent . . . . finally he says . . . he is looking for a job . . . . Classic con approach appears to me.

Then in court, one of the many points that I noticed of how he is being manipulative is the one you actually noticed that was quite evident when he could hear perfectly well, but pretended he couldn't at certain times when it served his interest. He was negotiating for a plea, even was smart enough to understand the system to know about Alford pleas, not every defendant knows about that. He discussed with you an Alford plea and correctly you told him that you didn't think the judge would go along with that, nor the DA's. But he's been doing some kind of manipulating.

Why is he doing the manipulating? Well, maybe he doesn't think exactly in the same syllogism that you and I do and perhaps is therefore a little difficult to fully understand his motivation, however it is not unknown in this system that through extensive discussions in the law library at Rikers with other, quote, experienced, unquote, individuals in the Criminal Justice System that the theory exists that the best way to handle a matter where you don't want to do time on a plea or do time at the end of a trial is to throw as many wrinkles into the case so that you can win it on appeal, whether it's a 730 issue, whether it's a hearing issue, whether it's any one of the issues that he is now bringing up.

So, in conclusion, I see nothing in his past history or his current history to justify stopping the proceeding now to give a 730.

Tr. at 6–8.

Defense counsel tried on numerous other occasions to persuade petitioner to attend the trial, but was rebuffed. Tr. at 130–38. At one point, the court ordered petitioner to be produced to the courtroom to decide whether to testify. Tr. at 138–39. Petitioner was unresponsive to questioning, and defense counsel stated: "He appears to be asking the court officers to cuff him and take him back upstairs." Tr. at 148. Justice FitzGerald allowed petitioner to be escorted upstairs. Tr. at 148. The remainder of the trial proceeded without petitioner's presence, and the jury convicted him of burglary in the second degree. Tr. at 208.

### Sentencing and Appeal

On December 6, 2007, petitioner appeared before Justice FitzGerald for sentencing. Sent. Tr. Dec. 6, 2007 at 1. Petitioner asked for an adjournment to obtain a replacement hearing aid and also claimed that his mother had died. Tr. at 2–3. In fact, petitioner's mother had died eleven years prior. SCR at 45–46. Justice FitzGerald sentenced petitioner to twelve years' imprisonment. Tr. at 19.

Petitioner appealed his sentence to the Appellate Division, First Department, claiming that (1) the trial court was in error to refuse to order a competency examination; (2) the trial court failed to ensure that he validly waived his right to be present; (3) the trial court improperly instructed the jury as to his absence; and (4) that his sentence was excessive. SCR 80–257. The

Appellate Division denied petitioner's appeal in a five-paragraph opinion.

People v. Woodley, 91 A.D.3d 480, 480 (2012). It held that:

> "The [trial] Court properly exercised its discretion in denying defense counsel's request for a CPL article 730 competency examination, which was made for the first time on the eve of trial. Nothing in the record casts doubt on defendant's competency. On the contrary, throughout the trial defendant demonstrated his understanding of the charges, familiarity with criminal proceedings and ability to assist in his defense. The court gave appropriate, but not excessive weight to a finding of malingering in a prior case, and there was no reason to believe defendant had gone from feigned to genuine incompetency in the intervening years. Defense counsel's assessment of defendant's competency was not dispositive. Furthermore, defendant's pre-pleading memorandum discussed defendant's psychiatric history, but tended to confirm that he was competent.
>
> Similarly, there is nothing to indicate that defendant was incompetent to waive his right to be present at trial. Despite the court's warnings that he had a right to be present and that the trial would proceed in his absence, defendant asked to be removed and refused to return to the courtroom."

Id. (internal citations omitted).

Petitioner filed for leave to appeal with the New York Court of Appeals. However, the Court of Appeals denied the application. People v. Woodley, 19 N.Y.3d 969, 973 (2012). Petitioner filed the instant petition for a writ of *habeas corpus* in 2013.

## Discussion

A prisoner in state custody may petition a federal court for a writ of *habeas corpus* on the ground that his confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). To bring the petition, the prisoner must show that he has exhausted his remedies in the state courts.

13

Id. § 2254(b)(1)(A). The federal court lacks authority to issue the writ where the claim has already been adjudicated on the merits in the state courts, unless the adjudication: (1) resulted in a decision contrary to or involving an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or (2) where the adjudication resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Id. § 2254(d). If the *habeas* proceeding concerns a factual determination by the state court, federal courts must afford that factual determination a presumption of correctness. Id. § 2254(e)(1). It is the *habeas* petitioner's burden to rebut this presumption of correctness by clear and convincing evidence. Id.

## 1. Whether it Was Objectively Unreasonable for the Trial Court to Refuse to Conduct a Competency Hearing.

The first issue raised by this *habeas* petition is whether it was objectively unreasonable for the state trial court to refuse to conduct a competency hearing before trying petitioner.

The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of liberty without due process of law. U.S. Const. amend XIV. It is well settled that the criminal trial of an incompetent defendant violates due process. Cooper v. Oklahoma. 517 U.S. 348, 354 (1996). A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and lacks a "rational as well as factual understanding of the proceedings against him." Id.

(internal marks omitted). A competency hearing must be held when there is reasonable ground for the trial court to conclude that defendant is incompetent to stand trial. Harris v. Kuhlmann, 346 F.3d 330, 350 (2d Cir. 2003).

Of course, the task of determining the need for a competency hearing is subjective. See id. It is the trial court which actually sees the defendant and observes his conduct and manner. See Maggio v. Fulford, 462 U.S. 111, 113 (1983). As with all findings of fact, the state court's findings relating to the defendant's competence are presumed to be correct and rebuttable only by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Harris, 346 F.3d at 351–52. However, the trial court's decision on whether to order a competency examination is subject to a different standard of review. Id. at 355. The relevant question is "not whether the evidence presented a reasonable ground for believing [the defendant] was incompetent" but "whether it was objectively unreasonable for the state trial court to have concluded (and the state appeals court to have agreed) that the circumstances did not present a reasonable ground for believing that [defendant] was incompetent," and thus fail to grant a competency examination. Id. at 355 (parentheses in original).

In *Harris v. Kuhlman*, the Second Circuit considered, among other things, whether the petitioner Curtis Harris was entitled to *habeas* relief based on the state trial court's refusal to order a competency examination. Id. at 349. A few months before trial, Harris escaped from custody and was shot in the head, with the bullet lodging in his brain. Id. at 335. Harris filed a motion seeking a

competency examination. Id. at 336. At oral argument on the motion, Harris's attorney expressed doubts as to his competency, saying "I have had difficulty communicating with my client in several respects. I would say that it is beyond my competence as a lawyer to decide whether this individual is competent to stand trial." Id. Rather than order a competency examination, the trial judge questioned Harris himself. Id. Harris's responses to these questions were "bizarre." Id. at 354. Nonetheless, the trial judge was satisfied as to Harris' competency and denied the motion for a competency examination. Id. at 336.

On *habeas* review, the district court denied Harris's petition as it related to his competency claim. The Second Circuit affirmed, although it did so for very specific reasons. It held that the state court's factual findings relating to Harris's competency, including a finding that he was malingering, were not objectively unreasonable given its own observations and an expert's determination that he was below-average intelligence but competent. Id. at 353. Even though Harris had suffered a gunshot wound to the brain, the Second Circuit noted that "there was evidence proffered to the state trial court suggesting [he] had recovered from the gunshot wound without any serious adverse effect on his mental capacity." Id. And while Harris's responses to the trial court's questions were bizarre, the Second Circuit found it impossible to determine, based on transcripts alone, whether he was truly confused or merely uncooperative. Id. at 354. In light of all the evidence, including some evidence suggesting Harris was in fact incompetent, the Second Circuit

16

deferred to the trial court's determination of competency and affirmed denial of *habeas* relief. Id.

In the instant case, petitioner argues that there was "ample evidence" before the trial court indicating the need for a competency examination. Pet'r Mem. Supp. at 28. He is inarguably correct on this point. His pre-pleading memorandum showed that he had been attending a continuing day program for the mentally ill until January 3, 2007 when that program closed, and was arrested a mere five weeks later for stealing clock radios. Pre-Plead. Mem. at 3–5. During the pretrial and trial proceedings, he engaged in increasingly bizarre behavior including refusing to appear for important hearings, twice requesting new counsel, dithering over whether to accept a plea agreement that would dramatically reduce his sentence in the face of conclusive evidence of guilt, refusing to attend jury selection and trial, and at all stages answering court questions in a manner that could alternatively be described as evasive or deranged. See infra. Moreover, the day before trial, petitioner's attorney expressed deep misgivings about his competence. Tr. Oct. 23, 2007 at 6–8. Thus, there was evidence before the trial court indicating petitioner was incompetent to stand trial.

However, the same conduct that implies incompetency can, from a different vantage point, be read as malingering and strategic obstruction of proceedings. The trial court was not oblivious to petitioner's behavior, but simply interpreted that behavior as obstructionism. Justice Yates had dealt

17

with petitioner in previous trials where he had delayed proceedings for nearly a year by first requesting a competency hearing, and then refusing to be interviewed by psychiatrists. Tr. May 30, 2007 at 2–5. When the competency hearing in the earlier case finally happened, petitioner was found competent to stand trial and was convicted. See Tr. Oct. 19, 2007 at 8–11.

When Justice Yates transferred petitioner's burglary case to Justice FitzGerald, he warned him of petitioner's reputation for malingering. Id. Of course, to a defense attorney this would seem an unfair and prejudicial act, one that predisposes the new judge to disregard signs of incompetence. But Justice FitzGerald did not accept Justice Yate's assessment on faith. In fact, petitioner's conduct before him was sufficient on its own to imply malingering. At the suppression hearing of Oct. 19, 2007, petitioner requested new counsel even though he had already asked for, and was granted, a similar request weeks earlier. Tr. at 5–6. He also asked for a few days' recess to review the proposed plea agreement. Id.

These requests could be read as manifestations of bi-polarity or some other mental illness, but they could also be read as strategic bids for delay. Justice FitzGerald, based on his current observations, apparently believed the latter. Indeed, after petitioner mentioned his use of psychotic medication, Justice FitzGerald observed: "You are telling me about psychotic medication even though you sound perfectly rational to me at the moment." Tr. at 9:5–6. Later in the hearing, he noted: "you sound very lucid and clear to me right now

18

. . . . Why do you need [an adjournment]? You are apparently quite rationale [sic], you're understanding everything that I am saying, I certainly understand you. What am I missing here?" Tr. at 11:8–16. Although clearly frustrated at petitioner's conduct at the suppression hearing, Justice FitzGerald nonetheless granted his request to adjourn until the following Monday to review the plea agreement. Tr. at 12.

On the day of trial, defense counsel announced to the court that, based on his interactions with petitioner, he had doubts as to his competency to stand trial. Tr. Oct. 23, 2007 at 4:1–15. He explained that: "I am looking at someone who doesn't seem to show consciousness or intelligence behind the eyes . . . it's just not . . . being foolish or stupid or stubborn, I think there is something else not happening behind the eyeballs." Tr. at 4–5. The court acknowledged but ultimately discredited these observations, explaining in detail its belief that petitioner is a "predicate manipulator." Tr. at 5:11.

In reaching this conclusion the court relied in large part on Judge Yate's previous experiences with petitioner. Tr. at 5–6. However, Justice FitzGerald also relied on his own observations. First, he noted that counsel had waited until the "eve of trial" to air his concerns, and that until that point neither side nor two judges had raised the issue of a competency exam, much less thought one necessary. Tr. at 6:12–15. He explained at length how he read petitioner's bizarre conduct not as deranged, but as a savvy and knowing attempt to delay the proceedings and create appealable issues. Tr. at 6–8. He concluded by

noting, "I see nothing in his past history or his current history to justify stopping the proceeding now to give a 730." Tr. at 8:7–9.

This case is similar enough to *Harris* that that case must control. While petitioner has raised evidence indicating that the trial court could have justifiably held a competency hearing, he has failed to show that the refusal to do so was objectively unreasonable. The Second Circuit, in denying Harris *habeas* relief, noted that an expert had determined he was competent to stand trial in the context of a previous suppression hearing. Harris, 346 F.3d at 354. Here, petitioner had a competency examination performed by experts in the previous trial before Justice Yates. Tr. Oct. 23, 2007 at 6–8. While Justice FitzGerald perhaps accorded this previous examination more weight than it deserved given the lapse of time involved, he also based his determination of competency on his own personal observations. Id.

The trial court had the benefit of actually observing petitioner's conduct, manner, and responsiveness to questions. One reading of the transcripts indicates that the court's dismissive attitude toward petitioner's mental illness was unfair, but an equally plausible reading suggests that petitioner was, in fact, a savvy malingerer, an expert at "gaming the system." This was the trial court's position. It is tempting for a district court, reviewing transcripts in hindsight, to resolve these contradictory readings in the mentally ill petitioner's favor. But that is exactly the *opposite* of what 28 U.S.C. § 2254 requires. See § 2254(e)(1). On *habeas* review, the district court must defer to the trial court's

factual determinations, including determinations of competency, unless the petitioner brings clear and convincing evidence to the contrary. Id. Where the trial court refuses to hold a competency examination, the district court must ask whether that decision was objectively unreasonable. Harris, 346 F.3d at 354. While it is a close call, this court cannot say that the state court's refusal to order a competency examination was objectively unreasonable in light of the court's personal observations of petitioner and his previous behavior.

**2. Whether Petitioner Knowingly and Voluntarily Waived His Right to Be Present at Trial**.

Petitioner argues that his absence from trial is grounds for *habeas* relief because he did not knowingly and voluntarily waive the right to be present.

The Constitution guarantees criminal defendants the right to be present at trial. Faretta v. California, 422 U.S. 806, 819 (1975). However, like most rights, the defendant may waive the right to be present at trial. Jones v. Murphy, 694 F.3d 225, 236 (2d Cir. 2012). To be valid, the waiver must be made knowingly and voluntarily. Id. The criminal defendant must be advised of the consequences of waiving his right, and relinquish that right intentionally, id. although in certain circumstances the waiver may be made by defense counsel. See Grayton v. Ercole, 691 F.3d 165, 175 (2d Cir. 2012).

During jury selection for petitioner's trial, petitioner asked the courtroom sergeant to leave the courtroom and be taken upstairs. Trial Tr. Oct. 22, 2007 at 16. At that point, Justice FitzGerald warned petitioner of the consequences of being absent from trial. Tr at 18-19. Nonetheless, a court officer informed

the court that petitioner was "ready to go upstairs." Tr. at 20:2. The following

exchange then occurred:

> THE COURT: . . . Okay Mr. Woodley, I gather you want to go back, is that right? Whatever you want to do.
>
> Does he want to go back? Only if he wants to go back.
>
> What do you want to do?
>
> [THE PETITIONER]: Yeah
>
> THE COURT: Yeah?
>
> [THE PETITIONER]: I don't want to proceed any [jury] selection with this attorney.
>
> ***
>
> THE COURT: Do you want to leave or do you want to stay?
>
> [THE PETITIONER]: I am saying because I –
>
> THE COURT: You want to stay?
>
> [THE PETITIONER]: If you are going to select it [the jury], select tomorrow
>
> ***
>
> THE COURT: You want to leave, okay. If you want to be here, that is fine.
>
> [THE PETITIONER]: You violate my constitutional rights.
>
> THE COURT: No, we are trying to do everything we can to accommodate you. You are doing everything you can to obstruct us.
>
> (WHEREUPON THE DEFENDANT EXITS THE COURTROOM).

Tr. at 19–25.

After the petitioner left the courtroom, Justice FitzGerald noted that the court was not equipped to "pipe in the trial to defendant." Tr. at 25. As an alternative, he made copies of the transcript available daily and resolved to give defense counsel regular breaks to visit petitioner and give him a chance to "change his mind and to come down" to the courtroom. Tr. at 25. The trial then proceeded without petitioner, except that at one point Justice FitzGerald ordered his presence to be given the opportunity to testify. Tr. at 138–45. The jury convicted petitioner in absentia. Tr. at 208.

Justice FitzGerald's lengthy warnings to petitioner regarding the consequences of leaving the courtroom sufficed to apprise him of the right to be present at trial. Moreover, as the transcript indicates, Justice FitzGerald engaged in a careful exchange with petitioner to determine whether his decision to leave was voluntarily. In the end, petitioner left the courtroom fully aware that by doing so he waived the right to be present at jury selection and trial. To Justice FitzGerald's credit, he provided numerous opportunities for defense counsel to communicate the proceedings to petitioner and to encourage him to return to the courtroom.

Given that the trial court had already determined petitioner's competence to stand trial, there is abundant evidence in the record that his decision to leave the courtroom was the result of a knowing and voluntary waiver of the right to be present at trial. Petitioner's argument that he did not validly waive the right to be present is without merit.

Conclusion

For the reasons given above, the petition for a writ of *habeas corpus* relief is denied. However, petitioner has satisfied the conditions specified in 28 U.S.C. § 2253(c) for the issuance of a certificate of appealability. Specifically, petitioner has made a substantial showing that the state trial court's refusal to order a competency examination violated his constitutional right to due process. Thus, a certificate of appealability is granted with regard to that claim only.

SO ORDERED.

Dated:  New York, New York
        August 17, 2015

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/17/15_

24